The next case today is Severino Frith et al. v. Whole Foods Market, Inc. et al. Appeal number 21-1171. Attorney Liss Reardon, please introduce yourself for the record and proceed with your argument. Good morning, your honors. This is Shannon Liss Reardon. I represent the plaintiff appellants in this case. I would like to reserve four minutes for rebuttal if I may. You may. Thank you. Your honors, the district court below viewed this case through far too narrow a lens and in doing so it also made its own factual conclusions which were entirely inappropriate on a motion to dismiss. This case alleges discrimination on basis of race and retaliation, both actionable under Title VII and the case should not have been dismissed. As we set forth in our papers, there was discrimination here. Whole Foods and Amazon discriminated against employees making a statement about Black Lives Matter, whereas they didn't discipline employees who supported LGBTQ rights and other political code. Not only did these companies... Ms. Liss Reardon, suppose someone, suppose they were tolerating all of these political statements, but an employee one day showed up with a Ku Klux Klan mask on. Are you saying that in order to eradicate that problem, the company could not have said, okay, we're going to enforce our dress policy and henceforth everybody will only be able to wear company logo? Well, your honor, that's not the case we have before us. That was the argument the defendants made was that, well, we can't, this, if the plaintiff's views are adopted here, we wouldn't be able to enforce our dress code against any other messages. What we're saying is that the message that was put forth here in the workplace supported Black employees. It was a statement against racism. The plaintiffs had a reasonable belief that they were opposing racism and that they were supporting their Black employees. Now, whether some other message that employees might have tried to voice in the workplace constituted race discrimination or sex discrimination or Title VII, that would be a separate case. I don't know whether supporting the KKK is itself a race-based message. That would be a question for another case. We're not talking about... Well, why wouldn't it be a race-based message? Excuse me? It was a philosophy that grew out of the whole white supremacy movement. Why wouldn't that be discrimination based upon being white? Well, if there were protesters who wanted to support the KKK at work and they wanted to come before the court and make the argument that what they were doing was supporting white people... But I'm trying to figure out what the difference is. Well, I'm trying to figure out when an employer has a right to draw the line, regardless of an individual employee's political beliefs. Well, again, this is not a political belief that was being stated. And we also cited an authority that has recognized... A federal authority has recognized that Black Lives Matter is not a political statement. It's a non-political statement. What we're saying here... But it's clearly a political statement to some. Well, whether or not it's a political statement to anyone, these workers were supporting their Black co-workers. They were asking questions about racial demographics and hiring. They were making requests that armed guards not be stationed at the stores because that was making Black employees uncomfortable. There was discrimination here. There was associational discrimination. But beyond that, this case is such a clear case of retaliation that it's hard for me to fathom how the district court overlooked that. These employees believed that they were standing up on behalf of their Black co-workers, whether they were Black or not Black themselves. They were disciplined for it. They were protesting what they reasonably believed to be discrimination and retaliation against them for standing up for their Black co-workers. Counsel, your opponents repeatedly make the point that, based on the allegations and the complaint, we have no idea the racial identity of any of the plaintiffs. It's perhaps a fair inference that the plaintiffs involve different racial identities. The point being that in the absence of any knowledge of their racial identity, there's no way of concluding or inferring that they're being discriminated against because of their race. Any individual is being discriminated because of his or her race. And that's the kind of discrimination you have to prove. The fact that they are supporting a racial message, that they are expressing support for their fellow Black employees, does not in any way establish within the meaning of the statute that they as individuals are being discriminated against because of their race. And I don't really see in your briefing that you have an answer to that contention. Your Honor, yes. So first of all, I believe the complaint makes clear that the plaintiffs are both Black and not Black. So the plaintiffs are a diverse class of employees. Five minutes, counsel. Okay. And secondly, if you look at the Supreme Court's decision from just last year in Bostock, the Supreme Court said that if you discriminate against a man and a woman on the basis of sex, that's still sex discrimination. And so take a look also, for example, at the Johnson case from the Sixth Circuit that we cite a lot in our briefs. In the Johnson case, a man was advocating for women and minorities in the workplace. And the court held that that was associational discrimination when he was adversely impacted because of that. But counsel, those cases predate Bostock by years. Do you have any cases post-Bostock that reflect the kind of analysis that you find in those cases? I think we did cite, I don't have them offhand, but I do believe we cited some post-Bostock cases in our briefing, which recognize this principle that I just said. But the Supreme Court just said you discriminate against a man on the basis of sex, you discriminate against a woman on the basis of sex, you can discriminate against men and women on the basis of sex. But if we could just take the principle we can make for a moment from the Johnson case, let's just say that there was more than one plaintiff in the Johnson case. Let's say that there was not just a man, but there was a woman. And the man and the woman were both advocating for the promotion of women in the workplace. It would be absurd to say that that is not an associational discrimination case because the plaintiffs are a man and a woman. Whereas if it was just a man, that would have been discrimination. Or if it was just a woman, that would have been discrimination. How can it not be discrimination if both man and a woman are advocating for their female co-workers? Same thing here where you have black employees and non-black employees both advocating on behalf of black co-workers. And the court assumed that, well, the court made a few factual assumptions that were not correct to do, certainly not on a motion to dismiss, not even on a motion for summary judgment. But the court determined that what the plaintiffs were doing was advocating for a cause to support black rights in general. That at the very least would have been a fact issue for a jury about whether they were advocating for their black co-workers or just for a more vague societal cause. Another point where the district court really made factual findings that were inappropriate on a motion to dismiss is that the court rejected the argument, which was spelled out in, I believe it was paragraph 20 of the complaint, that as the protests began and Whole Foods and Amazon began taking action against employees who were speaking out on behalf of their black co-workers by wearing Black Lives Matter masks, that they regarded the company's actions as being discriminatory and retaliatory, and in good faith, whether or not they actually were. It's clear you can have a retaliation claim for protesting what you reasonably believe to be discriminatory activity, even if it turns out that you were wrong and it's not in fact illegal. They in good faith believed that the company's not allowing them to wear this messaging to support their black co-workers was discriminatory and retaliatory and they were retaliated as a result of that. The district court said that they didn't make the right assertion of the timing that they had to start wearing the masks and then came to believe that the company's reaction was unlawful and then continued to wear the masks because they believed that it was unlawful. That's exactly what we spelled out in the complaint. And again, I believe that is paragraph... I'm sorry, it was paragraph... I believe it's around 50. I just had it up a moment ago, but I was looking for something else. Anyway, it was spelled out in the complaint. That's exactly what happened, that as the protests continued, they were surprised by the reaction and they doubled down and continued the protest because of that. And then they were disciplined as a result of that. So counsel, so it's your position that you can establish that the members of the class were being discriminated against because of their race, no matter what their racial identity is, so that their particular racial identity is irrelevant to a claim that they are being discriminated against because of their race? To me, that just seems like an illogical proposition that when the statute requires discrimination on the basis of a protected ground, it's irrelevant whether they in fact aren't because of their racial identity. But if you look at the whole point of associational discrimination, it should not make any sense what the race is of the person who is doing the advocacy. Again, consider what I said. In the classic associational example where you're talking about an interracial couple and a company disapproves of that interracial relationship, and if the non-employee is black, the employee is white, clearly the racial identity of that there, the racial identity is central to the objection of the employer. And in that sense, the associational theory makes sense, but we don't have that situation here. Well, Judge Lopez, if I could just take this, that hypothetical, that classic hypothetical, let's say that there is a black man and a white woman who are married to each other, and they are both employed by the same employer. And the employer takes action against both of them because of their interracial marriage. How can you say that that would not be associational discrimination, even though a white person and a black person would be discriminated against? They are being discriminated against because of their association with one another. Why would you only have associational discrimination if one of them is an employee and the other is a non-employee? It doesn't make any logical sense. And again, in the Johnson case, if there was a woman who was also advocating for women's promotions and better pay in addition to a man, why would that undercut the man's claim? You're saying that the man in Johnson, the male plaintiff would not have a claim anymore if he was joined by a woman who was making the same... It would make no sense. I don't mean to belabor this, but it does seem to me important. In your example, the racial identity of the two individuals is central to the action of the company against them. Here, in your case, the racial identity of the plaintiffs has nothing to do with the disciplinary actions the company has taken against them. The disciplinary actions... I'm sorry? It's associational discrimination. So it's the race of the people with whom they are associating, for whom they are advocating, that matters for associational discrimination. Well, I think we're probably going in circles, but thank you. I appreciate your response. Thank you. Thank you, Councillor. Attorney Les Reardon, please mute your audio and video. Attorney Banks, please unmute your audio and video and proceed with your argument. Thank you, and good morning, Your Honours. May it please the Court, Michael Banks for Whole Foods and Amazon. In the 11-plus minutes of argument so far, there has been no mention of the specific language of Title VII. There was considerable mention of discrimination as a concept, but not the statutory language that's controlling. That is unsurprising because there's no allegation in this case that black employees at Whole Foods wearing masks were treated differently from white employees wearing masks. And as I believe Judge Lippas noted, the races of the individual plaintiffs are not even alleged in the complaint. And it's that failure to focus on the individual's race, the employee's race, that led Judge Burroughs to dismiss the case. Judge Burroughs correctly interpreted and adopted the express language of Title VII in saying the proper focus is on the protected characteristic of the individual bringing the claim. That is compelled not just by the statutory language, but by the Supreme Court's decision in Bostock. Language controls when it is expansive and interpreted to include sexual orientation discrimination, as in Bostock, and it also controls when it is narrow and defines what kinds of discrimination Congress chose to prohibit. Judge Burroughs made an interesting and compelling point, we submit, that the purported class here consists of all employees who were subject to the Whole Foods and Amazon policies without regard to their race. And to quote Bostock, that is the end of the analysis. Do you think that the Johnson case was wrongly decided or doesn't survive Bostock? There's a real question, Judge Torreson, about whether Johnson would survive Bostock, but I think we need to go back and look at what are the facts of Johnson. A vice president of human resources at the University of Cincinnati complained specifically about hiring practices that the plaintiff contended were discriminatory and not consistent with the university's policies on affirmative action. There's some very broad language in Johnson and I wonder what your take is on it, particularly when it says the fact that plaintiff has not alleged discrimination because of his race is of no moment in as much as it was a racial situation in which the plaintiff became involved and also talks about imputing the race of the group that the plaintiff was advocating for to the plaintiff, the race or sex in that case as well. I mean, I'm just curious as to your thoughts on, because since there is no sort of similar case in the reasonable for the First Circuit to follow the Sixth Circuit with that sort of, I would say, maybe expansive view of Title VII. I submit that the Johnson court ended up in the right place because the individual complained about discrimination in the workplace and contended that he was retaliated against for that. The logic or language, I submit loose language of Sixth Circuit in Johnson should not survive the Supreme Court's decision in Bostock. Indeed, it's inconsistent with that decision and it's inconsistent with multiple other courts. In our brief, we cited the Second Circuit in Holcomb, the Fifth Circuit in Defenbaugh, also the Sixth Circuit in Tetro, all of which say associational discrimination is actionable if, as Judge Lippas noted, it ends up focusing on the individual. An individual in an interracial marriage, for example, where it is that individual's race that ends up being a factor. It's not associational discrimination as a loose concept, but the race of the individual. Indeed, in a post-Bostock decision that is not cited in our briefs, Kengersky v. Orlando Harper, a July 29 decision from the Third Circuit, it doesn't rely on Bostock, but it correctly relies on the language of Title VII, which says when you have associational discrimination, for example, discrimination involving an interracial marriage, as was noted, you are in effect discriminating against him, the plaintiff, because of his own race, and that brings it back to the language of Title VII. The broader language of Johnson, though, which is a pre-Bostock decision, we submit cannot survive. Counsel, did you say that Johnson ended up in the right place with respect to retaliation? Did I understand you to say that? Yes, in other words, Johnson would have stated a claim because he complained specifically not about a societal issue or messaging. He went to others in human resources and officers in the university and complained that we are not following our policies on racial diversity in hiring, and he contended that he suffered an adverse employment action because of that, so his cause of action would have been appropriate. That was not the logic, though, that the Sixth Circuit used in its pre-Bostock decision in finding a broader associational discrimination analysis. What about the retaliation claim in this case? I mean, certainly, appellants are correct that even if you're wrong about that this was not really protected conduct that you were complaining about, that you were concerned about, and that you were retaliated against because of your concern, you can still bring a good retaliation claim. I mean, this is a complex area of law. There is some uncertainty about this association theory. Why couldn't the plaintiffs have had a good faith, maybe wrong, maybe right? We'll have to sort that out, but why couldn't you take the view that there was at least a good faith belief here that in pursuing this Black Lives Matter advocacy that they had a good faith belief that they were protected by Title VII? Why shouldn't we take that view? Two reasons, Judge Lippes, and again, just like the other part of the analysis, it starts with the language of the statute. The Title VII prohibition on retaliation prohibits retaliation because an individual, quote, has opposed any practice made unlawful. It does begin with a reasonable and good faith belief on the part of the individual, but Judge Burroughs noted these individuals could not have formed a good faith or reasonable belief that wearing masks saying Black Lives Matter, not addressing workplace conduct, but merely wearing a mask conveying a social message could not have been a reasonable belief that they were opposing discrimination in the workplace. They were opposing a practice made unlawful. But aside from, excuse me, aside from the attire, though, they were also alleging other conduct that they were protesting. Yes, and if an individual such as one of the plaintiffs whose retaliation claims survived, Ms. Kinzer, had gone into human resources and said, we are protesting the way you treat Black employees, you don't hire well, you don't pay well, whatever the the allegation is, that would surely be protected conduct. The claims that Judge Burroughs dismissed, though, are very different, and that brings us to the second piece of this beyond the subjective state of mind. What did these employees do? They wanted to wear, or in some instances did wear, a mask with a message of something they believed to reflect social consciousness. The mask said Black Lives Matter. It did not mention Whole Foods. It did not mention Amazon. It did not identify an unlawful employment practice. These individuals wore a mask that has a slogan that I support, Whole Foods supports, that has been adopted by millions of Americans. When millions of Americans have worn or displayed Black Lives Matter messages, they're not doing it about Whole Foods or Amazon. It's a social message, not a protest in the workplace. It's really no different. What if employees wanted to stand in the entrance of the store and say to every customer... Why can't it be both? Well, it can be both, but it's not protected conduct if it's not specific to a workplace matter. In other words, suppose Judge Thompson, an employee, stands in the entrance of the store and serenades customers with refrains of not just Black Lives Matter, whatever the political diatribe is. Support Joe Biden because he's good for minorities. Support Donald Trump because he supports the Black community. End cash bail. Ban fossil fuels because the employee believes subjectively, as many studies have noted, that global warming disproportionately affects minority communities. Those are legitimate messages, and Whole Foods may endorse those messages. Amazon may endorse those messages, but they're also controversial and not uniformly accepted messages. The employer has the right to say a social message, one that does not address our conduct, is for us to display. We can display it on our internet site or publicly, but the best way that Whole Foods and Amazon can support organizations like Black Lives Matter, and this gets back to your KKK question, Judge Thompson, obviously an employee with a KKK mask would be fired. No questions asked, but there are more subtle messages. What about all lives matter? What about, you know, I could give infinite examples of subtle... But counsel, excuse me, the serenading examples that you gave have nothing to do with Title VII or protected conduct under Title VII or individuals who are protected by Title VII. I think the appellants are saying here that when they say Black Lives Matter, they're talking about not just generally, but specifically the Black employees of Whole Foods and Amazon. Their lives matter, and they're concerned about them as a racial group, and they are associating themselves with that particular racial group, and in associating Why doesn't that work? Because it's merely a general solidarity with employees that is subjectively or allegedly in the minds of the individuals wearing the mask. It's not a message about a practice at Amazon. It's merely claiming to stand in solidarity. Again, if I believe that climate change disproportionately affects minorities, as many scholars have written, and I wear a banned fossil fuels mask, I may be doing so in my heart of hearts, because I stand in solidarity with Black employees who I believe are disproportionately affected by climate change. It's a legitimate thought. But they're saying that it's your company's employment practices that they're protesting. So yes, it may be in accordance with more general things going on, but they're complaining about practices at Whole Foods and at Amazon. If they wear a message, your honor, that addresses Whole Foods, we can come back to whether it's against Black employees in pay. It doesn't, but suppose an employee wore that message. That would be protesting an unlawful employment practice. But broadcasting a social message, merely because the employee, without speaking and identifying the reason for that message, believes in his or her heart of hearts, that that's in solidarity with Black employees, is not an opposition to an unlawful employee practice. What do you make of their allegations that you were tolerant of all other political messages, and you only decided to draw the line when it came to the Black Lives Matter political message? I know they don't think it's political, but to categorize it as that. Two responses. One, messaging is not protected by Title VII, so Whole Foods or Amazon could have banned certain messages. It could have said, we support Black Lives Matter, but not Whole Foods. The point is, it doesn't implicate Title VII. If they had said, we will allow Black Lives Matter, but not all lives matter, that's not a Title VII. But they're saying that you didn't draw a line until there was a race issue. May I answer? I know I'm out of time. Yes. That is their allegation that there are some instances, not a broad-based policy, but there are some instances in the past, perhaps, when store managers or others have not enforced the dress code policy consistently. Still, it comes down to messaging. If this involved an adverse employment action against an individual, you enforce your attendance policy against Black employees, but not white employees, that would be unlawful. But messaging itself is not implicated by Title VII at all. And an employer's alleged occasional failure to enforce its messaging policy does not give rise to a Title VII claim. Judge Torrenson had a question. No, that's fine. I'm fine. Okay. Attorney Banks, please mute your audio and video. Attorney Liz Reardon, please unmute your audio and video and proceed with your rebuttal time. Thank you. Your Honors, as I believe was just brought out, for the retaliation claim here, it doesn't matter what the races were of the plaintiffs. Obviously, a white employee or a Black employee who protests workplace, what they reasonably perceived to be workplace discrimination against Black employees would be protected against retaliation. As we've cited in our briefing, courts have recognized that you don't have to, in order to engage in protective conduct, you don't have to march into human resources with a list of explicit demands that you think should be done to improve treatment of Black employees. You can do it through protests. You can do it through boycotts. The question here was whether or not, I mean, it was really a fact issue that the judge could have sent to a jury about whether what the plaintiffs were protesting was about treatment of Black workers in the workplace, as opposed to some more broad-based social cause. The issues that, the hypotheticals that defense counsel raised, like your hypothetical, Judge Thompson, again, are just not this case. In this case, you don't need to make all these jumps. Well, what if they were supporting Joe Biden because he supports Blacks or fossil fuels? There's no need to make a jump. They were arguing Black Lives Matter. They reasonably believed that they were supporting their Black co-workers. They were raising particular issues about Whole Foods policies. You don't have to make, you just don't have to make that jump. Excuse me. What policies of Amazon and Whole Foods, with respect to their treatment of Black employees, were they expressing concern about? I did not get a sense that the allegations addressed any particular work policies or practices of the companies that affected only Black employees. Well, so two things, Your Honor. One was that they reasonably believed what they were doing was supporting the rights of Black workers, and that was evidenced by a couple of examples included in the complaint, which was that they asked for the pay and promotional data regarding minorities at Whole Foods, and they also asked to have Whole Foods no longer station armed guards in the stores because it made Black employees uncomfortable. We've also cited case law for you that making inquiries, for example, about pay or promotions is protected conduct, even if you're not making an actual accusation. In paragraph 70 of our amended complaint, and this is secondly, they believed that Whole Foods and Amazon's response to these protests was itself discriminatory because it was adversely affecting Black employees who were not going to feel as comfortable in the workplace, given that their co-workers support for them was being shut down through this discipline. So in paragraph 70, we say further, as the protest has proceeded over the last weeks, employees are wearing the masks in order to challenge what they perceive to be racism and discrimination by Whole Foods for not allowing employees to wear the Black Lives Matter masks. And the complaint alleges that that was retaliation as well as discrimination, racial discrimination. Those were fact issues as to whether or not what they were doing was supporting their Black co-workers, whether they reasonably believed that they were taking these as opposed to just spreading what Judge Thompson called a political message in the workplace. And again, you don't need to make the leap here the way you would with questions about whether advocating for fossil fuels would affect Black workers. There's no need to make such a leap here. And finally, I just want to say that Johnson clearly survives Buzzstock and this court should follow the reasoning of Johnson, which would support the plaintiff's associational discrimination claims here. Again, if you had a man and a woman making these claims in support of women and minorities, that would be associational discrimination under the logic of the Johnson case. I still don't understand what the mistreatment of Black people by the company entailed or allegedly entailed. Let me just say, was there some situation where, you know, chatter near the water cooler where it came out or you're getting paid this but I'm getting paid much more and the person who was getting paid less was Black and that gave rise to a request for this company information? I mean, it sounds like you're saying that an employee who asks for company information alone, even if it's without any legitimate basis, is entitled to protection. Yes, we've cited cases supporting that. For example, asking for pay data to inquire whether women are being paid as much as men. That's protected activity, even if you're not actually accusing your employer of engaging in discrimination. And this is a pre-suit inquiry for company information about pay data. Well, this was during, I mean, this all happened really in a matter of weeks. This all was happening at once. I can understand how you can get that information in the context of a lawsuit, but I'm not aware of why an employee has a cashier, someone who works in the warehouse, has the right to get that kind of information. Of course you do, Your Honor. If someone wants to know whether their employer is mistreating women by paying them less than men and they inquire, please show us pay data for women and men, that is absolutely protected activity. And again, we've cited case law in the brief. But second of all, the question here is whether the plaintiffs reasonably believed that by shutting down the Black Lives Matter wearing of masks, whereas the company didn't shut down employees showing support for LGBTQ co-workers, was discriminating against blacks because when they supported blacks, that's when they brought out this dress code policy and started enforcing it for the first time. How do you respond to what your brother counsel just said there was occasional lax enforcement, not widespread? I mean, that was absolutely a fact issue. We cited in the complaint multiple instances of the company not enforcing its supposed dress code policy until the Black Lives Matter masks started coming out. There's no way that that could be decided on a motion to dismiss. We asserted fact there should have been discovery. In fact, the reason why originally we had moved for a preliminary injunction when it was clear that the district court had some uncertainties here, we proposed, well, let's do some quick discovery so that we can show to you that the company is treating the Black Lives Matter masks differently from how it treated LGBTQ. That's a given in this case. I mean, the enforcement of this dress code policy has been inconsistent, but the district court says that just doesn't matter. Whether they are being consistent or inconsistent doesn't matter. We're talking about whether the language of Title VII applies here, and that's the basis for the district court's decision. So it seems to me to talk about whether there was just doesn't matter. It's really irrelevant, isn't it? So what happened was the employees saw that Whole Foods and Amazon were shutting down this Black Lives Matter message, and they redoubled their efforts. They proceeded with the protests, and they defiantly wore the masks in order to state and show their opposition to the company having treated this protest in support of Black workers less favorably than it had treated showing of support for LGBTQ workers. Why isn't this case really viewed as one where Whole Foods, Amazon, I mean, they're saying this is not, Title VII does not protect speech. It's not a, we're a private employer, we're not the government. If through wearing a mask, wearing a dress, a message is being conveyed, we think it's inappropriate. We have a right to respond to that. That has nothing to do with discrimination under Title VII. We have the right as an employer to decide what messages our employees are going to convey by their dress. Why can't they do that? Well, they can do that if they're not discriminating on the basis of race. And I think facially what they're doing is on the basis of race, and they're discriminating against people who are associating with their Black co-workers, and they were retaliating. So speech is protected activity under the anti-retaliation provision of Title VII. So if your speech is, I think Black workers here are not being respected. I think by not letting us wear these Black Lives Matter masks, you are treating Black employees less favorably than LGBTQ employees. That is protected activity, and it should have at least been for a jury to question whether or not that was in fact what they reasonably, in fact, believed, as opposed to just making a political statement. This was explicitly race-based. This was associational. Black and white and other race employees were speaking out on behalf of their Black co-workers. They were asking questions, which obviously they would only ask questions about pay data and say that armed guards were making Black employees uncomfortable if they reasonably believed they were speaking out and because once the company tried to shut them down, they defiantly redoubled their efforts and said, no, you can't do that. We're going to keep wearing these masks. And they got disciplined. Thank you. Thank you, Your Honors. That concludes argument in this case. Attorney Liz Reardon and Attorney Banks, you should disconnect from the hearing at this time.